**PENNSYLVANIA R. CO. v. UNITED STATES et al. (Interstate Commerce Commission, Intervener).**

No. 2434.

District Court, W. D. Pennsylvania

May 24, 1930.

William S. Dalzell, of Pittsburgh, Pa., and Albert Ward, of Philadelphia, Pa. (Dalzell, Dalzell & McFall, of Pittsburgh, Pa., of counsel), for complainant.

Elmer E. Collins, Sp. Asst. to Atty. Gen., John Lord O'Brian, Asst. to Atty. Gen., and Louis E. Graham, U. S. Atty., of Beaver, Pa.

John S. Wendt, of Pittsburgh, Pa. (C. F. Taplin and H. H. Hoppe, both of Cleveland, Ohio, W. S. Bronson, of Washington, D. C., and W. W. Ahrens, of New York City, of counsel), for Pittsburgh & W. Va. Ry. Co.

Daniel W. Knowlton, Chief Counsel, and J. Stanley Payne, Asst. Chief Counsel, both of Washington, D. C., for Interstate Commerce Commission.

Before WOOLLEY, Circuit Judge, and GIBSON and SCHOONMAKER, District Judges.

WOOLLEY, Circuit Judge.

The Pittsburgh & West Virginia Railway Company applied to the Interstate Commerce Commission for a certificate of public convenience and necessity authorizing it to construct a branch, some six miles in length, from its line in the Monongahela Valley, known as its Connellsville Extension now under construction, to a point of junction with the Donora Southern Railroad, a four mile line which is practically a plant facility of the American Steel & Wire Company at Donora yet a common carrier subject to the Interstate Commerce Act. The proposed branch is intended to serve one or two minor communities near the Monongahela River but particularly the great plant of the American Steel & Wire Company which at present is served exclusively by a line of the Pennsylvania Railroad Company through connections with the same local railroad. After the Pennsylvania Railroad Company had intervened and a hearing was had, the Commission granted to the Pittsburgh & West Virginia Railway Company the certificate applied for (No. 7737 Finance Docket, 158 I. C. C. 749). The Pennsylvania Railroad Company then filed this bill (under chapter 32 of the Urgent Deficiency Appropriation Act of October 22, 1913, 38 Stat. 219, 220, 28 USCA § 43) to restrain the construction of the branch not on the ground that the Commission was without power to grant or withhold its permission but on the assertion that there was no competent evidence to sustain its certificate of public convenience and necessity. After the Interstate Commerce Commission had intervened, all parties respondent by their answers traversed the complainant's allegation of want of supporting evidence and as an additional defense challenged the complainant's right to maintain its bill because of lack of legal right exclusively to serve the named district and absence of legal injury inflicted by the Commission's order.

Before discussing these issues it may be well to look at the statute under which the proceeding before the Interstate Commerce Commission was inaugurated and concluded. The statute is the Transportation Act of 1920 and the pertinent provisions are paragraphs 18, 19 and 20 of section 1, Interstate Commerce Act, as amended by Transportation Act 1920, § 402 (49 USCA § 1, pars. 18–20). These provisions disclose a wholly new conception of control of interstate rail commerce in the United States—a radical departure from the old order. Before this act, any railroad, though engaged in the public service, could, so far as the federal government was concerned, extend or abandon its lines at will, thereby reaching out for or giving up traffic in competitive or noncompetitive regions, resulting at times in increased cost of construction and operation and increased losses to the company so conducting its business and to its competitors, and increased burdens upon the public. The Congress by the act of 1920, however, provided that the expansion or contraction of railroad activities should no longer be a matter of a carrier's independent judgment or desire but, being a matter of national concern affecting the economical development and operation of adequate rail-

way systems, should be a subject for consideration and determination and control by the Interstate Commerce Commission in the interest of the carriers generally and of the public particularly. Texas & Pac. Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U. S. 266, 277, 46 S. Ct. 263, 70 L. Ed. 578; Detroit & M. Ry. Co. v. Boyne City, G. & A. R. Co. (D. C.) 286 F. 540, 545; In the Construction of Railroad Lines in Eastern Oregon, 111 I. C. C. 3, 45. It provided specifically that:

"No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, * * * or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, * * * of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, * * * unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment." Paragraph 18, § 1.

In establishing this new policy of governmental control and having in mind the maintenance of competition and also the prevention of competition where it might hurt the carriers involved and the public at large, the Congress intended that this scheme of control should not be restricted to certain areas but should extend to all interstate carriers throughout the United States in order more effectively and economically to carry on everywhere the business of interstate transportation. Thus the Congress not only imposed upon the Commission a grave responsibility but reposed in it a broad discretion, one commensurate with the novel undertaking, and one not lightly to be disturbed by the courts. The exercise of this discretion amounts to an administrative judgment, comparable to that involved in a determination of the propriety or application of a rate, rule or practice, not to be set aside when it has substantial support of evidence. Virginian Railway Co. v. United States, 272 U. S. 658, 663, 47 S. Ct. 222, 71 L. Ed. 463; Dayton-Goose Creek Ry. Co. v. United States, 263 U. S. 456, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472; Colorado v. United States, 271 U. S. 153, 166, 46 S. Ct. 452, 70 L. Ed. 878; Texas & Pacific Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U. S. 266, 273, 46 S. Ct. 263, 70 L. Ed. 578; C., R.

I. & P. Ry. Co. v. United States, 274 U. S. 29, 33, 34, 47 S. Ct. 486, 71 L. Ed. 911. This discretionary power, resulting in nation-wide transportation control, was vested in the Commission because of its peculiar function and extensive knowledge in respect to matters of interstate transportation and there is little in the statute to indicate, or to limit, the manner in which the Commission should exercise this discretion. Whether it should do so only after a hearing is not a question pertinent to the present case because a hearing was in fact held. The main question is whether at the hearing the Commission had competent evidence on which it could base its finding of public convenience and necessity.

The Pennsylvania Railroad says there were no facts proved and no findings of fact made in that regard and that, accordingly, the Commission's action in awarding the certificate was arbitrary and therefore invalid.

■■ In form this proposition is one of law, made as though in a court of law. It is, however, addressed to the action of the Commission which, though vested with quasi judicial powers, is essentially an administrative tribunal. Before administering the law with respect to a given situation it must, of course, find the facts of the situation. But we surmise that it is not required to make formal findings of fact such as are required of a judge who, after a jury has been waived, hears and tries a case alone. Nor do we think that, as in the case of a judge trying facts, every phase of every fact pertinent to an application for a certificate of convenience and necessity need formally be proved and formally found because, in reposing discretion in the Commission, the Congress evidently had in mind that it was legislating with respect to a body of experts whose knowledge of transportation had through the years been accumulated from innumerable sources throughout the United States, and that, in carrying out the new policy of the transportation law, it intended that they should act as such, just as it looks upon the United States Board of Tax Appeals as a body of experts on taxation and intends, in given cases, such as special assessment of corporation taxes, that they should act as experts, and from their action in those cases it provided no appeal. So it seems that in the application for leave to extend the Donora branch, the Commission, an administrative tribunal, came to the trial of the issue of convenience and necessity equipped by training and experience to deal with that question adequately, and finally. Though acting as experts, the Commission must, nevertheless, have before it

facts in respect to the situation on which to base its judgment. An attempt to exercise discretion or render judgment without facts would not be an exercise of discretion at all. It would be an arbitrary act and, being beyond its power, would be unlawful. United States v. Abilene & So. Ry. Co., 265 U. S. 274, 288, 44 S. Ct. 565, 68 L. Ed. 1016. So the central issue on this bill is whether there were facts in the case before the Commission and, if so, whether they were substantial enough to warrant the Commission's order, wholly without regard to our views on its action. If there were facts and they were substantial, though differing in character and weight, this court cannot appraise or weigh them and take action of its own but must leave the matter entirely to the administrative body in whose hands the Congress placed it.

Are there any facts?

The first fact on which the complainant relies is that the large manufacturing area of Donora is efficiently and satisfactorily served by a line of its railroad which leads to Pittsburgh and, there meeting its main artery, extends east and west. Through that line and its manifold connections the heavy traffic moving into and out of Donora can be received from or moved to any zone in the United States, in consequence of which, it argues, there is no necessity for another railroad there. Against this fact and the conclusion drawn from it are others to the effect that if the proposed six mile branch of the Connellsville Extension were projected into Donora, a substantial portion of the heavy traffic out of and into that region, moving to and from the southeast and south over the Western Maryland Railroad and its connections, on which is the important port of Baltimore, could, because of the haul, shorter in respect to Donora and Baltimore than that of the Pennsylvania by seventy-one miles, be more speedily and economically handled. In addition, the haul over the Pittsburgh & West Virginia via Pittsburgh to Detroit is shorter by twelve hours than that of the Pennsylvania. Aside from the convenience which the new extension would render the community of Donora in having a line in competition with the Pennsylvania and in developing new industries, as indicated by resolutions of its Board of Trade, and aside from local considerations which move people in a community always to desire more rail facilities, the fact that by the new extension long hauls can be shortened and cheapened is alone a fact of substance which this court, on the complainant's contention that there are no facts, cannot ignore. Nor can it overlook the fact that by this extension the business in this area would have a new outlet not only to the east, southeast and south but to the west and northwest in combination with the Wheeling & Lake Erie, Bessemer & Lake Erie, and possibly the Wabash, to Lake Erie, which means the Lake Ports at which iron ore is received from the main sources of ore supplies farther to the northwest, permitting the return of ore cars to the Lake Ports loaded with coal where now they are returned by the Pennsylvania empty.

While the Commission in stating the case in its report referred to these matters as "claims" made by the contesting parties, these claims were, nevertheless, supported by facts proved by evidence, both pertinent and substantial, of which the Commission took notice and on which it manifestly based its decision. The Commission's allusions to its authorization of the Connellsville Extension previously given (No. 6229 Finance Docket, 138 I. C. C. 755) were more historical than anything else and were evidently made to disclose the "general plan" of the first extension which included transportation service to two very important industrial districts on the Monongahela river of which one is the district of Donora, here in question. In that case also the complainant was an intervening party. The Commission was not required to shut its eyes to what it saw in that proceeding or close its mind to the knowledge it there acquired, and proceed afresh in the instant application for a short extension from the long one without regard to what it knew—and could not forget—had a bearing one upon the other. Whatever regard the Commission may have given the former application as a related matter, distinguished from an evidential matter, in determining the later application cannot invalidate its last order. United States v. Abilene & S. R. Co., 265 U. S. 274, 44 S. Ct. 565, 68 L. Ed. 1016. There was, we find, independent of that proceeding and wholly within the instant proceeding, competent evidence on which the Commission could, and did, exercise its discretion with reference to the public convenience and necessity involved in the extension in dispute.

Discussion of what is really the first question in the case, that of the right of the Pennsylvania Railroad Company to maintain its bill in view of its lack of legal right to the entire transportation business of Donora and for want of legal wrong, committed or threatened, or of legal injury inflicted, by the Commission's order, has been purposely post-

poned until after the issues and facts of the case have been stated so that the question of law might stand out more sharply. Being threatened by the Pittsburgh & West Virginia Railway Company, through its proposed extension, with competition for traffic in the Donora district, the Pennsylvania Railroad Company undoubtedly had such an interest in the application for the extension as entitled it to intervene and be heard. It did intervene and was heard. But that interest alone did not give it a right to maintain an independent suit to set aside the Commission's order. Such a suit can be brought and maintained by a competitor only where some right of its own has been violated by the order. Sprunt & Son, Inc., v. United States, 50 S. Ct. 315, 74 L. Ed. ——, decided April 14, 1930. True, the complainant now is and for a long time has been exclusively serving Donora and is now receiving the profits from handling all the traffic flowing into and out of that busy district. But that is a privilege rather than a right—a privilege to be enjoyed so long as it shall last, not a right to be asserted, unless it be found somewhere in the law, written or unwritten. Certainly there is no unwritten law that gives a carrier, first to serve a community, the right to hold its traffic against all competitors. It is equally certain that the written law—the Transportation Act of 1920—does not explicitly or implicitly accord a noncompetitive traffic area to the first taker as the law accords a trade-mark to the first adopter. Instead of doing this the written law negatives such a right by providing expressly for the invasion by one carrier into a territory exclusively served by another on a showing of convenience and necessity of more transportation service for those inside reaching out and those outside reaching in. Where, as here, the showing is lawfully made and the Commission has validly acted, the carrier at whose expense the change is wrought has had no legal right invaded and has suffered no legal injury. In consequence it has nothing on which to sustain an independent suit to vacate and set aside such an order of the Interstate Commerce Commission.

In disposing of this case we are disturbed by some uncertainty or informality in the proceeding. The case was heard on April 25, 1930, by the court consisting of three judges. 28 USCA § 47. At the opening, the parties respondent moved to dismiss the bill substantially, as we remember, on the point of law last discussed. The hearing came up on a motion for a preliminary injunction to restrain the execution of the Commission's order until final decree. It was, however, ar-

gued, because of the need of speedy decision, as though on motion at final hearing for a perpetual injunction. A restraining order was waived on the court's promise of a prompt decision. In this situation, if correctly stated, we prefer to decide the case on the merits. Therefore the motion to dismiss for a specific reason is formally denied and the bill, for the two reasons stated, is dismissed with costs for the original and intervening respondents.