**ESCANABA & L. S. R. CO. v. UNITED STATE et al. (SCANDRETT et al., Interveners).** *

No. 831.

District Court, W. D. Michigan, N. D.

March 10, 1937.

*Judgment affirmed 58 S.Ct. 556, 82 L.Ed. ——.

Upham, Black, Russell & Richardson, of Milwaukee, Wis., and Walter, Burchmore & Belknap, of Chicago, Ill., for plaintiff.

Elmer B. Collins, Sp. Asst. to the Atty. Gen., and John Dickinson, Asst. Atty. Gen., for the United States.

O. W. Dynes and C. R. Sutherland, both of Chicago, Ill., for interveners Scandrett and others.

James Stanley Payne, Asst. Chief Counsel, Interstate Commerce Commission, of Washington, D. C., for defendant Interstate Commerce Commission.

Before SIMONS, Circuit Judge, and MOINET and RAYMOND, District Judges.

RAYMOND, District Judge.

Plaintiff seeks, under the authority of 28 U.S.C. §§ 41(28), 45, 46 and 47, (28 U.S.C. A. §§ 41 (28), 45, 46, 47), to enjoin an order and certificate of the Interstate Commerce Commission entered November 18, 1936. The Commission's report issued therewith is found in Pooling of Ore Traffic in Wisconsin and Michigan, 219 I.C.C. 285. That report and the findings of fact accompanying this opinion sufficiently state the relationship of the parties and the course of the litigation. Upon oral argument, counsel agreed that the issues here for consideration are greatly restricted by the provisions of the Transportation Act of 1920 (41 Stat. 456), which introduced into federal legislation a new railroad policy and vested the Commission with extensive powers and discretion beyond the scope of review by the courts. See New England Divisions Case, 261 U.S. 184, 189, 43 S.Ct. 270, 273, 67 L. Ed. 605; Texas & Pacific Railway Co. v. Gulf, etc., Railway Co., 270 U.S. 266, 277, 46 S.Ct. 263, 266, 70 L.Ed. 578; and Colorado v. United States, 271 U.S. 153, 162, 163, 46 S.Ct. 452, 453, 454, 70 L.Ed. 878.

In general, the order and certificate complained of authorize the pooling of iron ore traffic from the Menominee Range to the docks at Escanaba, Mich., the pooling of the revenues therefrom, the expenses thereof, and of the tracks, equipment, facilities, and employees engaged in that traffic between the Chicago, Milwaukee, St. Paul & Pacific Railroad Company and the Chicago & North Western Railway Company; the pooling by these two railroads of their earnings on class and commodity traffic interchanged between them and the plaintiff at Channing and Escanaba; and the abandonment by the Milwaukee Road of its operations under trackage rights for transportation of iron ore over the line of plaintiff's railway from Channing, Mich., to Escanaba.

Plaintiff urges that the record contains no substantial testimony tending to prove that competition will not be unduly restrained by the pooling of traffic in iron ore; that there is no evidence to support findings sustaining the pooling of class or commodity traffic; that there is no substantial evidence warranting the Commission's finding that public convenience and necessity permit abandonment of the operation by the Milwaukee Road of plaintiff's railway line from Channing to Escanaba under the agreement for trackage rights, and argues that the overwhelming preponderance of the evidence is that the direct probable results of such abandonment will be serious injury and detriment to the pub-

lic. Plaintiff also insists that the Commission's jurisdiction to authorize the pooling of freight by railroad is expressly limited by the requirement of paragraph 1 of section 5 of the act (49 U.S.C.A. § 5(1), that division of traffic or earnings shall be assented to by all the carriers involved; that it is a carrier involved; and that its assent has not been given.

■■ The binding effect of fact findings by the Commission and the limitations upon the power of the courts to disturb them have been so frequently noted that restatement is not required. See Pittsburgh & W. V. Railway Co. v. United States (D.C.) 41 F. (2d) 806, 808. It is clear that courts may not consider the weight of the evidence or the wisdom of the order made, provided there is evidence to sustain it. The courts accord to the findings of the Commission "the strength due to the judgments of a tribunal appointed by law and informed by experience." See Illinois Central Railroad Co. et al. v. Interstate Commerce Commission, 206 U.S. 441, 27 S.Ct. 700, 704, 51 L.Ed. 1128. In the instant case, the Commission found that the proposed pooling arrangement, considered in its entirety, will not impair service to the public, will effect substantial economies in operation, and will not unduly restrain competition; that the divisions as to such traffic have been assented to by the parties to the pooling agreement; and that the terms and conditions under which such division of traffic and earnings is proposed to be effected are just and reasonable. Examination of the record is convincing that there is substantial evidence to support these findings. It is true that the applicants did not upon some issues produce all of the available evidence; that some of the evidence was of the kind commonly designated as opinion or expert evidence, given by employees of some of the interested parties; and that other evidence was indirect or circumstantial. But these considerations do not warrant its rejection in determining whether or not there was more than a mere scintilla of evidence before the Commission. Such evidence is commonly accepted as convincing, even in criminal trials. Against the admitted loss and inconvenience to the communities along the line of plaintiff's railroad, the Commission was charged with the responsibility of weighing the loss and inconvenience to the larger general public; national in scope. Under repeated decisions, we have no right to weigh this evidence to determine wheth-

er our conclusions thereon would differ from those of the Commission.

■■ It is important to observe that the abandonment authorized by the Commission does not relate to usual and ordinary railroad operations. It is limited to the discontinuance of operations by the Milwaukee Railroad under a contract for trackage rights relating principally to the transportation of iron ore. Continuance by plaintiff of operation by the railroad is in no way limited. The trackage contract confers only a privilege. It does not obligate the Milwaukee to make any use of plaintiff's track. The pooling arrangement approved by the Commission enables the Milwaukee to effect substantial economies which would not be available if it were compelled to continue to operate on plaintiff's line of railway under its contract for trackage rights. Under the trackage contract, the Milwaukee is obligated to make certain payments to plaintiff depending upon the volume of traffic, and it is subject to a minimum charge of $27,180 annually. Whatever rights plaintiff may have under that contract must be adjudicated in proceedings other than the present. The court fails to perceive that the order and certificate assailed deprive plaintiff of any legal right.

■ Plaintiff's claim that it is a carrier involved is based upon its assertion that the ore traffic which will be pooled now moves over its line; that the trains carrying it are under the supervision of its dispatchers and signal operators; and that the pooling arrangement will result in prejudice against it in the interchange of traffic at that point. It is to be observed that under the contract for trackage rights, the ore is carried by the Milwaukee in its own cars with its own locomotives and its own train crews under bills of lading issued by it, and under tariffs and rates established by it, without plaintiff's concurrence. The train dispatching and signaling by plaintiff are necessary incidents to joint use of the rails by two carriers. It is clear that plaintiff is not a carrier of the ore traffic. We must hold that under the contract the Milwaukee, as lessee of trackage rights, is the sole carrier of this traffic. Other traffic interchanged at Channing with the Milwaukee is not disturbed by the pooling arrangement. Possibility and perhaps the probability of later abandonment of a portion of plaintiff's line of railway cannot affect the consequences of the findings of the Commission that present and

156

future public convenience and necessity permit the abandonment of operation under trackage rights·over plaintiff's line of railway.

The conclusion of the court is that the certificate and order complained of find adequate support in the record, and that the prayer of the petition filed herein should be denied. An order will be entered accordingly.