**DETROIT/WAYNE COUNTY PORT AUTHORITY, Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-SION, and United States of America, Respondents,**

**Canadian National Railway Company, et al., Intervenors.**

No. 94–1068.

United States Court of Appeals, District of Columbia Circuit.

Argued March 7, 1995.

Decided July 18, 1995.

Fritz R. Kahn, Washington, DC, argued the cause for petitioner. With him on the briefs was Theodore Sachs, Detroit, MI.

Craig M. Keats, Associate General Counsel, I.C.C., Washington, DC, argued the cause for respondents. With him on the brief were Henri F. Rush, General Counsel, I.C.C., Anne K. Bingaman, Asst. Atty. Gen., John J. Powers, III and John P. Fonte, Attys., U.S. Dept. of Justice, Washington, DC. Laurence H. Schecker, Counsel, I.C.C., Washington, DC, entered an appearance.

Robert P. vom Eigen, Charles A. Spitulnik and Alicia M. Serfaty, Washington, DC, were on the brief for intervenors Canadian National R. Co., et al.

Eileen Nowikowski and Theodore Sachs, Detroit, MI, entered appearances for amicus curiae.

Before SENTELLE, HENDERSON and TATEL, Circuit Judges.

TATEL, Circuit Judge:

This case presents just one question of statutory interpretation: is intervenor Canadian National Railway Company's construction of a new tunnel beneath the St. Clair River to replace a 100–year–old tunnel ninety feet to the south "an extension to any of its railroad lines" or "an additional railroad line" within the meaning of section 402 of the Transportation Act of 1920, 49 U.S.C. § 10901(a) (1988), requiring Interstate Commerce Commission approval? The Commission ruled that it was neither. Because the Commission adopted a reasonable interpretation of the statute, and because its application of that interpretation to this case was not arbitrary, we sustain its decision.

## I.

The Canadian National Railway operates a tunnel beneath the St. Clair River between Port Huron, Michigan and Sarnia, Ontario. In 1992, Canadian National decided to replace this 100–year–old tunnel with a new tunnel running parallel to and just ninety feet from the existing tunnel. The new tunnel will accommodate the double-stack container cars that have become increasingly popular among shippers. Because the old tunnel is too small to handle double-stack cars, they must be decoupled from the train, taken across the river by barge, and recoupled to the train on the other side. The new tunnel will eliminate the need for decoupling double-stack cars, thus cutting twelve hours from the time required to cross the river between the United States and Canada and making Canadian National's line significantly more attractive to shippers.

Canadian National, together with Canadian Pacific Limited, owns and operates a second tunnel sixty miles south of Port Huron which runs under the Detroit River between Detroit, Michigan and Windsor, Ontario. Like the old Port Huron tunnel, the Detroit tunnel cannot accommodate double-stack container cars. Upon learning of Canadian National's plans to replace the Port Huron tunnel, the City of Detroit filed a complaint with the Interstate Commerce Commission claiming that the construction of the new tunnel required Commission approval under section 402(18) of the Transportation Act, 49 U.S.C. § 10901(a). That section requires a covered carrier to obtain a certificate of public necessity from the Commission before constructing or operating "an extension [of] any of its railroad lines" or "an additional railroad line." *Id.* The Canadian Pacific Limited and petitioner Detroit/Wayne County Port Authority joined the City as complainants. Ruling that the new tunnel was neither an "extension" nor an "addition" to a railroad line, the Commission dismissed the complaint. The Port Authority, joined by *amici curiae* the Windsor Harbour Commission and the Metropolitan Detroit AFL–CIO, petitions for review.

## II.

We review the Commission's interpretation of section 10901, a statute it is charged with enforcing, under the principles set forth in *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If "Congress has directly spoken to the precise question at issue" so that its intent is "clear," we "must give effect to [that] unambiguously expressed intent." *Id.* at 842–43,

104 S.Ct. at 2781. But "if the statute is silent or ambiguous with respect to the specific issue," we limit our inquiry to determining whether the agency's interpretation "is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

Because the Transportation Act nowhere defines the terms "extension" or "addition," we proceed to step two of *Chevron* to determine whether the Commission's interpretation of section 10901(a) is permissible. According to the Commission, the new tunnel is not an "extension" or "addition" within the meaning of the statute because, put simply, the tunnel will neither *extend* nor *add to* Canadian National's existing system. Instead, the Commission viewed the new tunnel as a relocation or improvement of Canadian National's existing line between Port Huron and Sarnia that did not require section 10901 approval because it did not extend into new territory. *See City of Detroit v. Canadian Nat'l Ry.*, 9 I.C.C.2d 1208, 1218–19 (Nov. 12, 1993). To the Commission, the relocation of the tunnel is analogous to double-tracking— where a carrier adds a second track to an existing right-of-way—and to electrification, both significant improvements to existing lines that do not require Commission approval. *See id.* at 1218–20. As the Commission observed, the construction of the new tunnel is functionally equivalent to simply enlarging the existing tunnel to accommodate double-stack container cars, an improvement that would not, as petitioner concedes, require Commission approval. *See id.* at 1221 (Phillips, Comm'r, concurring).

The Commission's distinction between extensions on the one hand and relocations or improvements on the other is reasonable and consistent with the statute and its legislative history. As the Commission explained, Congress designed the Transportation Act to "prevent railroads from risking their capital on new investments at the expense of maintaining and improving their existing ones, thereby jeopardizing the satisfaction of their common carrier obligations. Investing in existing systems, however, was not the kind of activity that Congress sought to regulate in 1920." *Id.* at 1216. According to the Commission, "Congress did not give

any indication that it intended to erect regulatory hurdles to a carrier investing its capital to improve its own plant." *Id.; see also Texas & Pac. Ry. v. Gulf, Colo. & S.F. Ry.*, 270 U.S. 266, 278, 46 S.Ct. 263, 266, 70 L.Ed. 578 (1926) (Congress exempted spur and industrial tracks from certification in part because such tracks "are commonly constructed ... to improve the facilities required by shippers already served by the carrier"); *Railroad Comm'n v. Southern Pac. Co.*, 264 U.S. 331, 345, 44 S.Ct. 376, 379, 68 L.Ed. 713 (1924) ("[M]ere relocation of a main track ... which does not involve a real addition to, or abandonment of, main tracks and terminals, or a substantial change in destination, [may] not come within [section 10901(a)]."). The Commission's determination that Canadian National's new tunnel does not require its approval is consistent with this policy.

Petitioner argues that we must set aside the Commission's decision because it was based on a misreading of *Texas & Pacific*. In that case, the railroad argued that its proposed construction was a "spur" or "industrial track" within the meaning of section 10907(b) and therefore exempt from the certification requirement of section 10901(a). 270 U.S. at 276–77, 46 S.Ct. at 265–66. The Court disagreed, holding that because the proposed line would extend into new territory, it was an "extension" under section 10901(a) requiring Commission approval even though it resembled a spur in other respects. *Id.* at 277–79, 46 S.Ct. at 266–67.

According to petitioner, the Commission read *Texas & Pacific* to hold that *only* construction that invades new territory requires Commission approval under section 10901(a). *See* Petitioner's Brief at 7–8. This, of course, was not the holding of *Texas & Pacific*, and had the Commission's decision been based on such a reading, we would have no choice but to remand. As we have held, "an agency decision cannot be sustained ... where it is based not on its own judgment but on an erroneous view of the law." *Prill v. NLRB*, 755 F.2d 941, 947 (D.C.Cir.), *cert. denied* 474 U.S. 948, 106 S.Ct. 313, 88 L.Ed.2d 294 (1985).

While the Commission's discussion of *Texas & Pacific* is hardly a model of clarity, we

do not agree with petitioner that the Commission based its decision on a misreading of the case. We view the Commission's ruling as grounded in its own interpretation of the text and of the legislative history of the Act, reinforced by due consideration of the Supreme Court's construction of both in *Texas & Pacific*. As we note above, the Commission interpreted the Act and its legislative history as indicating that Congress did not intend to regulate improvements to existing systems. *See Detroit v. Canadian Nat'l*, 9 I.C.C.2d at 1214–16. At the same time, the Commission recognized that under *Texas & Pacific*, even an improvement like the relocation in this case would qualify as an "extension" or "addition" if it invaded new territory. The Commission therefore looked to *Texas & Pacific* not, as petitioner contends, for the proposition that only construction which invades new territory requires section 10901(a) approval, but rather for the proposition that *Texas & Pacific* did not require the Commission to treat the tunnel relocation as an extension because the new tunnel did not invade new territory. *Cf. id.* at 1219 ("Where the physical relocation of a line does not [extend] into or [invade] new territory, ... [no] further inquiry into the effect on competition is required."). Because "[w]e will ... 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned,'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)), we find no need to remand for further explanation of *Texas & Pacific*.

The Port Authority next contends that the Commission's decision in this case is inconsistent with its 1952 decision in *Missouri Pacific Railroad*, 282 I.C.C. 388 (1952). There the Commission ruled that its jurisdiction under section 10901(a) would reach any change in service, including a relocation, that "concerned service to shippers; the development of new territory or traffic; established more competition or otherwise changed existing competitive situations; affected, more than ordinarily, a carrier's revenues or operating expenses; or was related to the matter of rail transportation generally." *Id.* at 391. Because the new tunnel will give Canadian National a significant advantage over its competitors on the line between Detroit and Windsor, *see Detroit v. Canadian Nat'l*, 9 I.C.C.2d at 1211–13, the Port Authority argues that the Commission's refusal to assert jurisdiction over the new tunnel amounts to an unjustified departure from the standard set forth in *Missouri Pacific*.

■ Conceding that "there is language in previous Commission decisions that supports a finding of jurisdiction [here]," *id.* at 1218, the Commission explained why the approach adopted in this case was the better course. According to the Commission, none of the factors listed in *Missouri Pacific* came from the text of section 10901 itself, and only the language regarding invasions into "new territory" was based on court precedent. *Id.* The Commission also noted that adopting petitioner's view of *Missouri Pacific* would result in "a great and unwarranted expansion of the agency's jurisdiction," *id.* at 1220, by requiring it, contrary to Congressional intent, to assert jurisdiction over any improvement—like double-tracking or electrification—that strengthened a carrier's competitive position. *See id.* at 1219–20. For these reasons, the Commission expressly "disapproved" any language in *Missouri Pacific* that is inconsistent with the proposition that a relocation or an improvement to an existing line that does not extend into new territory is not an extension or addition under section 10901(a). *Id.* at 1220. Because the Commission has "provide[d] a reasoned analysis indicating that [its] prior policies and standards are being deliberately changed, not casually ignored," *see Office of Communication of United Church of Christ v. FCC*, 707 F.2d 1413, 1425 (D.C.Cir.1983) (internal quotation marks and citations omitted), we can defer to its new interpretation of section 10901(a).

Petitioner's remaining arguments provide no basis for a different conclusion. Although petitioner cites earlier ICC decisions in which the Commission asserted jurisdiction over relocations of existing lines that did not extend into new territory, *see* Petitioner's Br. at 15–16 (citing, *e.g.*, *Big Sandy & C.R. Co. Constr.*, 175 I.C.C. 286, 288 (1931)), those

cases relied on the same "competitive-effects" principle that the Commission abandoned when it overruled *Missouri Pacific.* Petitioner also cites *Chicago & Northwestern Transportation Co.,* Finance Docket No. 32433, 1994 WL 178841, 1994 ICC LEXIS 80 (ICC Apr. 26, 1994), a case decided after the decision here, where the Commission asserted jurisdiction under section 10901 after stating that "a common thread, running through the various decisions as to what constitutes an extension, is that the construction of a line that substantially alters the competitive status quo among the railroads is an extension requiring Commission approval." *See id.,* 1994 WL 178841 at *2, 1994 ICC LEXIS 80 at *7. That case, however, did not involve a relocation, but rather construction which, although otherwise similar to a spur or an industrial track, extended into territory not currently served by the railroad and already served by another carrier. *See id.,* 1994 WL 178841 at *1, *2, at *2, *5. *Chicago Northwestern* is thus analogous to *Texas & Pacific,* compare *id. with* 270 U.S. at 274–76, 46 S.Ct. at 265, and is not inconsistent with the Commission's decision in this case.

For the foregoing reasons, we deny the petition for review.

*So ordered.*