# Cleveland, C., C. & St. L. Ry. Co. v. George H. Halbert.

1. RAILROADS—*Duty of, to Give Warning of Approach of Trains at Points of Danger.*—It is the duty of those having charge of a train to give notice of its approach to all points of known or reasonably apprehended danger, and a railroad crossing is a place of known danger, and persons using the same are bound to use reasonable precaution to avoid injury to others, and this is the rule at common law whether the highway passes under or over the railroad track or whether they cross upon the same grade.

2. SAME—*Statutory Provision as to Ringing Bell or Blowing Whistle at Crossing Construed.*—The statutory provision requiring railroads to ring a bell or blow a whistle upon approaching a crossing applies to cases where the highway passes under or over the railroad track as well as to cases where they cross upon the same grade.

3. CONSTRUCTION—*Of Statutes.*—In construing a statute the legislative intent should control, if it can be attained.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Edgar County; the Hon. FRANK K. DUNN, Judge, presiding. Heard in this court at the November term, 1897. Affirmed. Opinion filed June 3, 1898.

R. L. McKINLAY, C. S. CONGER and GEO. F. McNULTY, attorneys for appellant.

James A. Eads and Dundas & O'Hair, attorneys for appellee.

Mr. Justice Glenn delivered the opinion of the Court.

This is an action on the case, brought by appellee to recover damages for injuries received by him on the 17th day of July, 1896, on account of the alleged negligent and care-less manner the servants and employes of appellant managed and operated a passenger train of cars, at and near an overhead road crossing, on the line of its road, about one and one-half miles east of the city of Paris, Illinois. The case was tried at the special term, 1897, of Edgar County Circuit Court, with a jury that returned a verdict for appellee for $1,500, upon which judgment was rendered.

The place where appellee received his injuries, and the surroundings, were substantially as follows: the overhead bridge in question is about one and one-half miles east of the city of Paris, and at a point where the railroad runs practically east and west. South of this overhead bridge about two hundred feet is the Paris and Terre Haute public highway, which runs east and west and parallel with the railroad track. North of the bridge and adjacent to the railroad right of way is the Clinton highway, which runs from said bridge east and is parallel with the railroad. The overhead bridge is a part of the Clinton road, which runs north and south and connects the Clinton road with the Paris and Terre Haute road. After the Clinton road goes east from the bridge about two hundred and forty feet it divides, one road running due north and known as the boundary line road, and the main Clinton road veering off in a northeasterly direction. Both the Clinton, and Paris and Terre Haute roads, are considerably lower, after they leave the bridge approaches, than the bridge itself, probably fifteen feet lower. The railroad track just west of the overhead bridge, runs through a cut about fifteen or twenty feet deep, and upon the north bank of this cut is the earth taken from the cut, and it is overgrown with weeds and shrubbery. Just outside of the right of way fence were several apple trees, not less than

four, the first one being very near to the bridge itself, eight feet from the right of way fence, the others ranging in a row west, until the last one is twenty feet from the fence. The apple trees were covered with leaves in July, 1896, as was also this shrubbery and weeds. The approach which led from the overhead bridge down to the natural surface of the Clinton road extended in a quarter circle from a northern direction around to the east and was about twelve or fifteen feet high at the bridge, and was about twenty-five feet wide. In the field north of the Clinton road and west of the boundary line road, was high Indian corn, the same being tasseled. The cut of the railroad east of the overhead bridge was probably not more than six or eight feet, and the bridge itself was about twenty feet above the rails.

On the morning of July 17, 1896, as appellee was returning from his farm, when he came to the intersection of the boundary line road with the Clinton road, two hundred and forty feet from the overhead bridge, he stopped his horse he was driving in a single buggy, and looked and listened for a train.

Not hearing or observing any indications of a train, he drove west on the Clinton road on a trot and turned south to go over the bridge, and just as he got to the bridge he saw the train, and as it shot under the bridge it whistled, and his horse became frightened and ran south off the bridge to the Terre Haute road, some two hundred feet south, then turned west toward Paris. At this point appellee's wagon was turned over and he was thrown out and dragged, by being caught in some part of his wagon, about three or four hundred feet down a graveled hill and received the injuries complained of. There was no point between where appellee stopped and listened for the train, that a train could be seen coming from the west, until the bridge was nearly reached.

The first count in the declaration is a common law count, for a failure to perform a duty required by law—that is, to give a notice of the approach of appellant's trains at all points of known or apprehended danger.

The second count charges statutory negligence. A failure on the part of appellant to ring a bell of prescribed weight, or blow a whistle, at a point eighty rods west of the crossing, and to keep the same ringing or the whistle sounding until the crossing was reached.

A railroad crossing over a highway is a place of known danger. In the use of the same, each of the parties are bound to use reasonable precaution to avoid injury to the other. The common law count in the declaration is for the failure of appellant to observe and perform a duty imposed by law. " It is the duty of those having charge of the train to give notice of their approach at all points of known or reasonably apprehended danger. This is almost universally done by the ringing of the bell or sounding of the whistle, and frequently both. In exceptional cases, where the highest degree of care is deemed advisable, flagging is resorted to." Chicago & A. R. R. Co. v. Dillon, 123 Ill. 570; Toledo, P. & W. Ry. Co. v. Foster, 43 Ill. 415; Chicago, B. & Q. R. R. Co. v. Perkins, 125 Ill. 127. Whether these precautions have been performed and observed, are questions of fact for the jury. It is conceded that there was a conflict in the evidence as to whether appellee's vision was obstructed from the point where he stopped and looked and listened, until he reached the bridge, so he could not see the train approaching from the west, and the verdict of the jury warrants the presumption that the jury found it was. It is, however, contended by appellant, that these obstructions did not prevent appellee from seeing the smoke from the engine, or hearing the exhaust of steam. This was a very light train consisting of an engine and three cars, and was running at from forty to sixty miles an hour. From the very nature of things if there was any smoke escaping from the smoke stack on the engine, at the rate the train was running, the smoke would drop back in the wake of the train, and could not be seen if the train could not be seen. The varying circumstances under which smoke from the engine rises and drops, make it too uncertain for one to say that appellee could have seen the smoke of the

train approaching the crossing the day he was injured, because he on other days had seen it. No one testifies to seeing the smoke escaping from the engine at the time it was approaching the crossing, or heard the noise of the exhaust of the steam. The witnesses for appellant testify to what they had heard and observed at other times and with reference to other trains. Appellee testifies that he stopped and looked and listened, and that he neither saw nor heard any indications of an approaching train. We assume from the verdict of the jury that the findings on these questions were with appellee. The same assumption may be indulged in with reference to whether the bell had been rung and the whistle sounded.

The only acts by appellee of contributory negligence, pointed out by appellant's counsel in their brief and insisted upon, are his not seeing when he could see, and not hearing when he could hear the approaching train, and having shown in this regard he was not guilty, it follows that appellee at the time he approached the crossing and went thereon, was in the exercise of the care and caution of an ordinary prudent person under like circumstances for his own safety, and may recover.

The appellee in the second count of his declaration alleges that the bridge in question was an extension of the Clinton road and that it was an overhead bridge twenty feet above the railroad track; that this bridge was a crossing within the meaning of the statute; that the appellant willfully and negligently failed to give the statutory signals as its train approached this crossing and the appellee was thereby induced to go on the crossing, and his horse, startled by the sudden appearance of the engine and its noises, ran away, and he received the injuries complained of. The statute is as follows: " Every railroad corporation shall cause a bell, of at least thirty pounds weight, and a steam whistle, to be placed and kept on each locomotive, and shall cause the same to be rung or whistled by the engineer or fireman at a distance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and it shall be

kept ringing or whistling until such highway is reached."
Starr & Curtis' Stats., Chap. 114, p. 74, Sec. 6.

Counsel for appellant claim that this case does not come
within the provisions of this act, and cite the case of Blanch-
ard v. Lake S. & M. S. Ry. Co., 126 Ill. 425, as conclusive
of this question. In that case the place where the deceased
was struck and killed, and the circumstances surrounding
him, were different from the place and surroundings in
question in this case. In that case the main questions
were, was the deceased a trespasser? was he guilty of gross
negligence at the time he was killed? and should the
trial court have instructed the jury to find for the defend-
ant? The court held, answering each of these questions
in the affirmative. By the abstracts of the briefs filed with
the opinion in Blanchard's case, it does not appear that the
question raised in this case was insisted upon, or even men-
tioned by the learned counsel representing the respective
parties. With all due respect for the learned justice who
prepared the opinion in that case, it may fairly be said,
the reference to the question arising in this case may be
regarded as *obiter dictum.*

As has been observed, the crossing or intersection of a
public highway by a railroad, is a dangerous place. The
place in question where appellee went on the overhead
highway and where he received his injuries, and the sur-
roundings at the time, illustrate very forcibly that this was
a very dangerous place. To cross the railroad upon the
overhead bridge, at the place in question, the danger would
be equally as great, if not greater, than to cross it on a
plane with the railroad or under it.

In constructing a statute the legislative intent should con-
trol, if it can be attained. At first blush, upon reading the
statute, the idea suggests itself, the intent and purpose of
the legislature was to provide all reasonable means to pro-
tect life and limb, and preserve property. This, the act
provides, should be done by giving notice of the approach
of trains at such crossings by ringing a bell of prescribed
weight or sounding a whistle. If the danger is equally as

great when a person is approaching or crossing an over-head crossing as when crossing a public highway at a grade, then the importance of notice of the approaching train is equally as great in one case as the other. From the universal use of these signals, it would seem they were a necessity to prevent the loss of life or limb and the preservation of property.

It is contended by appellant's counsel that the words " cross and intersect " as used in this act mean one and the same thing; that they are synonymous. In this contention they are not sustained by the modern lexicographers. Uniformly a distinction is made. When a highway intersects a railroad they meet on the same plane. When it crosses a railroad it passes over or under the railroad on a different plane, or it may be on the same plane. The distinction between these two words is tersely stated by the Court of Appeals of the State of New York, in the case of In re Lockport & Buffalo R. R. Co., 77 N. Y. 557, in which the court says: Every intersection is a crossing, but every crossing may not be an intersection. One railroad may cross another over or under it, but not on the same level; and in such case there would be, strictly speaking, no intersection."

The well-considered case of The People v. New York C. R. R. Co., 13 N. Y. 78, is a case brought to recover a penalty on a statute substantially the same as ours, except the word " intersect " was not used in the New York statute. In that case the public highway ran under the railroad. The court held that case came clearly within the statute.

The purposes of this statute are humane, and the observance of its requirements is attended with but a trifling expense, and is in no way unreasonable, and we think the case at bar falls within its provisions.

If the court erred in giving appellee's first instruction because it was too general, it was cured by his subsequent instructions, in which the law was correctly stated as to each count in the declaration. Appellant's second refused instruction was fully covered by the instructions given on his behalf.

It is claimed by appellant that the trial court erred in allowing the witness Hunter to answer the question, " Is there any other place there, that one can go, to avoid the approaching train, when within sixty feet of the bridge ? I mean at the time of this accident." A. " No, sir. You would have to drive on and face the music from there on." The question, it is urged, is leading. That ground can not be considered by this court because it does not appear that it was made in the court below. It is objected to as calling for the opinion of the witness. This objection is not well taken. The witness is asked to state a fact. Counsel say in their brief, in this connection, that there was evidence that appellee could have turned in at Glenn's gate, and that witnesses testified this could be done.

It is next claimed the court erred in not allowing the engineer, Guildruff, to testify as to the loud noises the engine made when the lever was dropped down to the eighth inch notch. Counsel will observe upon an examination of the record, the witness did testify as to this matter.

There is no ground for complaint that the damages were excessive. The question of damages in cases of this kind are peculiarly for the jury, and this court will not interfere with the verdict, unless it appears to be tainted with passion, prejudice or partiality.

The judgment of the Circuit Court is affirmed.