S. A. L. RAILROAD COMPANY, a Corporation, *Appellant,* v. TAMPA SOUTHERN RAILROAD COMPANY, a Corporation, *Appellee.*

Division B.

Opinion filed March 12, 1929.

Petition for rehearing denied April 20, 1929.

*John B. Singletary,* for Appellant;

*John H. Carter,* for Appellee.

GIBLIN (Circuit Judge):

This cause had proceeded in the lower court to the taking of testimony upon the issues presented by the bill of com-

plaint of the complainant (appellee) and the answer of the defendant (appellant). The defendant's general demurrer to the bill had been overruled prior to the filing of the answer. The order overruling the demurrer was not appealed from and its propriety is not to be reviewed here.

On the date set for the hearing of the testimony the defendant applied to the court for leave to amend its answer. Leave to file the tendered amendment was granted, except as to certain portions thereof which were not allowed to be filed. After the defendant had amended its answer the complainant applied to the court for leave to reply to the answer, as amended, or to amend its bill, to meet the averments of the answer, as amended. Such leave was granted and subsequently the complainant amended its bill by striking a certain paragraph thereof and inserting a paragraph in its stead and by adding two additional paragraphs.

In the order granting leave to the complainant to reply to the answer, as amended, or to amend its bill, it was provided that ''in the event the bill is amended in lieu of the filing of a special replication, the defendant shall have twenty days from the filing of the amendment in which to plead, answer or demur as it may be advised.''

After complainant's bill had been amended, the defendant, within twenty days, filed a general demurrer to the complainant's bill, as amended, and a special demurrer addressed severally to each of the paragraphs incorporated in the bill by amendment.

The solicitors for the complainant then set down for argument before the court the special demurrer of the defendant. The general demurrer of the defendant to the entire bill, as amended, was not set down for argument.

Upon the hearing of the special demurrer it was overruled by the court and the defendant was allowed twenty

days in which "to answer the said amendments"; and it is from this order that this appeal is prosecuted.

It is unnecessary to review at length the allegations of the complainant's bill, but, for the sake of intelligible discussion of the questions here presented, it may be well to briefly state the character of the suit and the nature of the relief sought by the complainant.

It appears from the allegations of the bill that the complainant had been granted by the City of Sarasota the right to construct, upon a certain strip of land owned in fee simple by the city, a line of railway tracks and to connect such tracks with certain other tracks which had been previously constructed on said land and which were owned by the city, for the purpose of affording to the complainant access by trains and cars to certain water terminals located upon the land owned by the city and to enable the complainant to provide transportation facilities to such industries as should be established and located adjacent to the involved strip of land. It is alleged in the bill that the defendant, which had been previously granted by the city the right to use, and to operate trains and cars upon, the city's tracks which were already constructed upon the strip of land, had, without the consent of the city or of the complainant, constructed certain dead-end spur tracks over and across the right of way which had been granted by the city to the complainant and had placed empty freight cars on such spur tracks for the purpose, and with the effect, of obstructing the construction by the complainant of the tracks it proposed to construct and preventing the enjoyment by the complainant of the privileges which had been granted to it by the city. Other pertinent facts were alleged.

The complainant seeks primarily to have the alleged interference by the defendant enjoined.

The amendment to the defendant's answer, which occas-

ioned the amendment of the complainant's bill, contained the averment that the construction of the line of railway proposed by the complainant, which is a railroad company engaged in interstate commerce, was an extension of the complainant's line of railroad and that the complainant had not procured, in accordance with the act of Congress, known as the Transportation Act of 1920 (Act of Congress of February 28, 1920, Chapter 91, Sec. 402, par. 18), a certificate "that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad."

The complainant made no attack upon the amendment to the answer, treating its averments as proper matters of defense, and to meet such averments amended its bill.

The first of such amendments consisted of the substitution of a paragraph for one which was stricken from the bill In the substituted paragraph (numbered X) the complainant alleged, among other things, that he proposed construction of the tracks in question was a part of the original project of the complainant for the construction of its railroad from a point near the City of Tampa southerly to the City of Sarasota; that such original project contemplated, embraced and included the construction of the tracks which constitute the subject-matter of this suit; and that such original project had been begun prior to the enactment of the Transportation Act. There were allegations designed to show that the work incident to the effectuation of the original project had been prosecuted with reasonable diligence, under the circumstances, in accordance with the original plan.

The Interstate Commerce Commission has held that where construction was begun in good faith prior to the effective date of the Transportation Act, and the work has

been prosecuted with reasonable diligence, under the circumstances, in accordance with the original plan, it follows that no certificate of public convenience and necessity is required. (In the matter of the Uvalde Northern Railroad Co., etc., 67 Interest. Com. Com'n. R. 554; In the matter of the Gulf Port Terminal Railroad Co., etc., 71 Interest. Com. Com'n. R. 759.) Detroit Terminal R. Co., v Pennsylvania Detroit R. Co., 15 Fed. 2nd Ed., 507 (which holds likewise).

The allegations of the amendment designed to show that the complainant's original project had been pursued with reasonable diligence since its initation were "that construction work on said project was begun in November, 1917, and suspended in December, 1918, by direction of the United States Director of Railroads, except on the main line into Bradenton and one spur north of Palmetto in Manatee County, until April, 1920, when it was resumed on the Ellenton Belt, and August, 1923, when it was resumed on the unfinished line into Sarasota."

We think that such allegations, standing alone, or considered in connection with other allegations of the bill, as amended, are insufficient to show that the work had been prosecuted with reasonable diligence. Federal control of railroads terminated on March 1, 1920, and, as it appears from the bill, the complainant did not procure from the City of Sarasota the right and privilege of constructing the line of railway which constitutes the subject-matter of this suit until May 2, 1925. There are no allegations in the bill, as amended, to show why the project, which contemplated, embraced and included the construction of the tracks in question, was not completed within such a long period of time. Circumstances which may have occasioned the delay are not set forth. In view of this poverty of allegation we do not think that the quoted portion of the amendment

under consideration added anything germane or pertinent to the complainant's bill.

The amendment contained an allegation that "upon the resumption of construction on the Ellenton Belt, as above stated, objection was made by certain parties to the construction of same, upon the ground that the company had no certificate of public necessity and convenience from the Interstate Railroad Commission," whereupon the complainant communicated with the Director of the Bureau of Finance of the Interstate Commerce Commission who advised the complainant that in view of a certain affidavit which had been submitted to him by the complainant he was of the opinion that it was not necessary to secure a certificate of public convenience and necessity in order to complete the construction of the Ellenton Belt.

We fail to appreciate what useful or proper purpose would be served by such allegation. Aside from the fact that the Ellenton Belt is not the subject-matter of this suit, we cannot think that the individual opinion of the author of the letter had any force or effect. It was merely the expression of his view.

The only other allegation of the amendment which we are considering was that "said track is an industrial spur or switch being constructed solely to reach the freight and express business of the fish shipping industries located at and around the city water terminals aforesaid, which are about a mile off of complainant's main line into the City of Sarasota."

The transportation Act of 1920 (Sec. 402, par. 22) provides that "the authority of the Commission conferred by paragraphs 18 to 21, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one State." It was evidently the purpose of the

complainant, in incorporating the quoted allegation in the amendment, to avail itself of this provision of the act.

The Supreme Court of the United States (Texas & Pacific Ry. Co. v. Gulf-Colorado & Santa Fe Ry. Co., 270. U. S. 266, 46 Sup. Ct. Rep. 263, 70 Law Ed. 578), in discussing and construing this provision, said: ''The carrier was authorized by Congress to construct without authority from the Commission, 'spur, industrial, team, switching or side tracks * * * to be located wholly within one state.' Tracks of that character are commonly constructed either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others who, being in the same territory and similarly situated, are entitled to like service from the carrier. The question whether the construction should be allowed or compelled depends largely upon local conditions which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small. But where the proposed trackage extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad within the meaning of paragraph 18, although the line be short, and although the character of the service contemplated be that commonly rendered to industries by means of spur or industrial tracks. Being an extension, it cannot be built unless the Federal Commission issues its certificate that public necessity and convenience require its construction.''

In view of the cited authority it is our judgment that complainant has not by its allegations shown that the proposed trackage is within the provisions of paragraph 22 of Section 402 of the Transporation Act.

We think, because of the reasons we have stated, that the lower court erred in overruling the defendant's special demurrer to the paragraph of the complainant's bill, as amended, which we have been considering.

The second of the amendments made to its bill by the complainant consisting of an added paragraph (numbered XI) contained allegations designed to show that the defendant was estopped to complain of, or interfere with, the construction by the complainant of the proposed line of railway, or that the defendant was contractually obligated to permit such construction, by reason of the provisions of a certain contract entered into on August 27, 1924, between the defendant and the Atlantic Coast Line Railroad Company.

It is needless to consider the provisions of the contract referred to in view of the conclusion we have reached that the complainant, which is a separate, independent corporation, cannot properly claim any rights or privileges under such contract, to which it was not a party. The sole predicate upon which such claim is advanced by the complainant is the allegation in its bill that the complainant corporation is owned by the Atlantic Coast Line Railroad Company. We think such a predicate constitutes no foundation for the assertion by the complainant of any rights or privileges under such contract.

We therefore think that the lower court erred in overruling the special demurrer addressed to the paragraph in question.

The third of the amendments made to its bill by the complainant, consisting of an added paragraph (numbered

XII) merely contained the allegation that ''the acts and conduct of the defendant in the premises tend to the manifest wrong, injury and oppression of your orator, whereof it is remediless at and by the strict rules of the common law, and elsewhere save in a court of equity where matters of this nature are properly cognizable and relievable.''

We do not think there was error committed by the lower court in overruling the special demurrer addressed to this paragraph.

We pass now to a consideration of the propriety of the order appealed from insofar as it required the defendant ''to answer the said amendments'' within a specified time. It will be remembered that after the complainant amended its bill in the respects pointed out the defendant interposed a general demurrer addressed to the entire bill, as amended. No ruling upon the general demurrer has been made. It appears that the lower court disregarded it, evidently under the belief that its filing was unauthorized and improper because of the fact that the defendant's general demurrer to the original bill had previously been overruled.

We think the defendant had the right to test the sufficiency of the bill, as amended, by demurrer and that the lower court was in error in requiring the defendant to answer portions of such bill, as amended, when its sufficiency as an entirety, had been properly tested by a general demurrer upon which there had been no ruling. Bowes v. Hoeg, 15 Fla. 403, (text 409) ; Haimovitz v. Hawk, 80 Fla. 272, 85 So. R. 668.

It is ordered that the order of the lower court insofar as it overruled the special demurrer of the defendant to paragraphs numbered X and XI of the complainant's bill of complaint, as amended, and insofar as it required the defendant to answer the amendments to such bill, be and it is

reversed; and that such order be and it is affirmed insofar as it overruled the special demurrer of the defendant to paragraph XII of the complainant's bill of complaint, as amended.

The cause is remanded for further and appropriate proceedings consistent with this opinion.

It is so ordered.

WHITFIELD, P. J. AND BUFORD, J., concur.

TERRELL, C. J. AND BROWN, J., concur in the opinion and judgment.