St. Louis Southwestern Railway Company *v.* Missouri Pacific Railroad Company.

4-2547

Opinion delivered May 16, 1932.

Carter, Jones & Turney and Lamb & Adams, for appellant.

R. E. Wiley, for appellee.

HUMPHREYS, J. Appellee, a railroad company doing an interstate and intrastate business, and owning terminal facilities in North Little Rock, Arkansas, filed its application with the Arkansas Railroad Commission under § 1643 of Crawford & Moses' Digest, to fix the point and manner of crossing with a proposed spur, an industrial track of appellant, for the purpose of serving directly the cotton seed oil plant in North Little Rock, which proposed spur was to extend from its own track a distance of 5,460 feet in a south and southeasterly direction to the plant and property of said National Cotton Seed Products Company. Notice was given to appellant, and the application and appellant's objections thereto were heard upon testimony adduced by each with the result that appellee's application was denied, from which an appeal was prosecuted to the circuit court. The circuit court heard the cause, quashed the order of the Commission, and fixed the point of crossing at grade 265 feet east from its switch connection with the main lead switch or old main line of the St. Louis Southwestern Railway Company, and directed the Commission to proceed in conformity with its order, from which is this appeal.

Appellant contends the circuit court erred in directing the Commission to fix the point and manner of crossing, because, first, under the statute it has no authority to act until appellee acquires the right-of-way by condemnation proceedings, and, second, until it obtains a certificate of convenience and necessity for the crossing from the Interstate Commerce Commission as provided by paragraph 18 of § 1 of the Interstate Commerce Act.

The section of Crawford & Moses' Digest, referred to and made the basis of appellee's petition, in so far as applicable here, is as follows:

"*Crossings.* The commission shall have exclusive power to determine and prescribe the manner, including the particular point of crossing and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of one railroad by another railroad, or street railroad by a railroad, so far as applicable.''

It will be observed that there is nothing in the statute relative to a condemnation of the right-of-way before the Commission can proceed to fix the place and manner of a proposed crossing of one railroad by another. The legal right of one railroad to cross another exists by virtue of § 1 of article 17 of our Constitution, which is as follows:

"Every railroad company shall have the right with its road to intersect, cross and connect with any other road.'' Therefore, it is unnecessary to acquire a legal right for railroads to cross or intersect each other by a proceeding in court. As stated above, that right exists under our Constitution. Of course, it would be necessary if railroads could not agree as to the compensation or damages to condemn the right-of-way in order to determine the amount of compensation or damage, but it seems to us that the orderly way would be to first fix the place and manner of crossing and then proceed in the proper tribunal to condemn the land needed to effect the crossing at the place fixed or designated. The case of *Missouri K. & T. R. Co.* v. *St. Louis S. W. Ry. Co.,* (Tex. Civ. App.) 239 S W. 337, cited by appellant in support of its contention that condemnation proceedings must be brought and determined before the Commission can fix the place and manner of crossing, has no application in the instant case because in Texas the right to cross must first be determined by the judgment of a court; whereas in this State the Constitution fixes the right to cross.

Paragraph 18, § 1, of the Interstate Commerce Act referred to by appellant in support of its second contention, in so far as applicable, is as follows:

"(18) *Extension or Abandonment of Lines, Certificates Required.* No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there first shall have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation of such additional or extended line of railroad."

The above paragraph is limited by paragraph 22 of said section, and is as follows:

"(22) *Construction, etc., of Spurs, Switches, etc., within State.* The authority of the Commission conferred by paragraphs (18) to (21) both inclusive, shall not extend to the construction or abandonment of spurs, industrial, team, switching or sidetracks, located wholly within one State, or of street suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation."

After a careful reading and analysis of the evidence adduced in the instant case, the court has concluded that the proposed improvement is a spur within the meaning of paragraph 22, and not an extension of the line of appellee's railroad within the meaning of § 18. The proposed improvement being a spur only, it was unnecessary to obtain a certificate of convenience and necessity for a crossing from the Interstate Commerce Commission before appellee could file its application before the Railroad Commission of Arkansas to fix the place and manner of the crossing.

The judgment of the circuit court is therefore affirmed.