# ST. LOUIS SOUTHWESTERN RAILWAY CO. *v.* MISSOURI PACIFIC RAILROAD CO.

No. 364.   Argued January 18, 1933.—Decided March 27, 1933

*Mr. Harold R. Small,* with whom *Mr. Arthur L. Adams* was on the brief, for petitioner.

*Mr. Robert E. Wiley,* with whom *Mr. Edward J. White* was on the brief, for respondent.

Mr. Justice Brandeis delivered the opinion of the Court.

The Constitution of Arkansas, Article XVII, § 1, declares: " Every railroad company shall have the right with its road to intersect, connect with, or cross any other road." A statute provides that the Railroad Commission " shall have exclusive power to determine and prescribe the manner, including the particular point of crossing and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of one railroad by another railroad. . . ." Act April 1, 1919, p. 411, § 9; Crawford & Moses Digest, § 1643.

Proceeding under that statute, without first obtaining from the Interstate Commerce Commission a certificate of public convenience and necessity under paragraph 18 of § 1 of the Interstate Commerce Act as amended by Transportation Act, 1920,[1] the Missouri Pacific Railroad applied to the Arkansas Commission for a crossing with an industrial track of a spur of the St. Louis Southwestern Railway at grade, at a point in North Little Rock—the crossing to be constructed at the applicant's expense and in accordance " with the terms of installation, operation, maintenance and protection of such crossing as may be fixed by " the Commission. At the hearing thereon the St. Louis Southwestern appeared in opposition; but it filed no pleading and made no statement as to the ground of its opposition.

---

[1] " No carrier by railroad subject to this Act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, . . . unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad. . . ." Act of February 28, 1920, c. 91, § 402 (18), 41 Stat. 456, 477.

Both companies are interstate carriers. The record of the proceedings before the Arkansas Commission occupies 82 pages of the printed record. But there is in it nothing which indicates that either party had then in mind any question arising under the Interstate Commerce Act. The application to the Arkansas Commission alleged that the Missouri Pacific hauls over its extensive system most of the traffic to and from the plant of the Dixie Cotton Oil Mills at North Little Rock; that in order to handle this traffic, cars must now be switched from or to its lines for a distance of 500 feet over tracks of the St. Louis Southwestern; that if the Missouri Pacific were enabled to reach the plant wholly over its own lines, operations would be facilitated; that to this end it had arranged to build to the plant a spur 5,460 feet long; and that to make this connection with its main line the crossing is necessary. At the opening of the hearing, counsel for the Missouri Pacific asked leave to amend the application by alleging that the proposed industrial track would be " an industrial lead throughout its entire length, for the service of the public generally, and operation and serving of industries that may be located in this new territory "— that is, an industrial track from which switches would lead to new industries that might be located there.

The St. Louis Southwestern objected to the allowance of the amendment; its objection was sustained by the Commission; and its counsel stated that the introduction of any evidence of the purpose to make the track an industrial lead would be objected to. But as the hearing proceeded there was evidence (brought out largely through the cross-examination by the St. Louis Southwestern's counsel) that it was the hope of the Missouri Pacific that the proposed track would ultimately be used as an industrial lead track. The Arkansas Commission denied the Missouri Pacific's application to fix the place

and manner of the crossing. Why it did so does not appear. It rendered no opinion; and its order stated merely that " having heard all the evidence " and " after having made a personal inspection of all the physical properties described in the petition and involved in this proceeding, [the Commission] is of the opinion that said application should be denied." A rehearing sought was also denied without opinion or other indication of the reason for the Commission's action.

From the order, and upon the record made before the Commission, the Missouri Pacific appealed to the Circuit Court of Pulaski County. Act of February 15, 1921, p. 177, § 20; Crawford & Moses Digest (Castle's 1927 Supp.), § 8417z3. There, the St. Louis Southwestern set up, by requests for findings and rulings, several objections to the granting of the application. Among them, was a request to find that the proposed track of the Missouri Pacific was an extension of its lines into new territory, as distinguished from a spur to an industry; and to rule that, for this reason, the track could not be lawfully built or used without first procuring from the Interstate Commerce Commission a certificate of public convenience and necessity. The Circuit Court refused to make the finding and ruling requested; held that the Missouri Pacific was entitled to the crossing as prayed for; and directed the Commission to take action accordingly. The St. Louis Southwestern then appealed to the Supreme Court of Arkansas; and, besides a claim based wholly on the state law, insisted that the Arkansas Commission was without power to fix the point and manner of crossing, since no certificate of public convenience and necessity had been secured from the Interstate Commerce Commission. That court, in affirming the judgment, held specifically that the proposed track was a spur located wholly in the State of Arkansas, within the meaning of paragraph 22

of § 1 of the Interstate Commerce Act,[2] and so not subject to the requirement of a certificate from the federal Commission. 185 Ark. 824; 49 S.W. (2d) 1054. Because of the decision of that federal question certiorari was granted. 287 U.S. 589.

The St. Louis Southwestern asks us to reverse the judgment on the ground that upon the evidence introduced before the Arkansas Commission the proposed track should be held to be an extension of the Missouri Pacific's line into new territory, within the meaning of paragraph 18, as applied in *Texas Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*, 270 U.S. 266. The Missouri Pacific insists that its right to the crossing cannot be questioned in this proceeding, which is limited to fixing the place and manner of the crossing; that under the state practice its right to a crossing could be challenged only by an independent suit—a bill in equity; that, in any event, the judgment should be affirmed, because, if the character of the proposed track is relevant in this enquiry the Supreme Court properly held it to be a spur; and that since it is located wholly within the State of Arkansas, the Interstate Commerce Commission had no authority over its construction.

The Supreme Court of Arkansas stated in its opinion the contentions of the St. Louis Southwestern and then proceeded to answer them. The contentions stated were that " the circuit court erred in directing the Commission to fix the point and manner of crossing, because first: under the statute it has no authority to act until appellee acquires the right of way by condemnation proceedings,

---

[2] " The authority of the Commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State. . . ." Act of February 28, 1920, c. 91, § 402 (22), 41 Stat. 456, 478.

and second: until it obtains a certificate of convenience and necessity for the crossing from the Interstate Commerce Commission." That court's answers to the contentions were: First, that the right to the crossing exists under the state constitution and that "the orderly way would be to first fix the place and manner of crossing and then proceed in the proper tribunal to condemn the land needed to effect the crossing at the place fixed or designated." Second, that upon the evidence the proposed track, which is located wholly within Arkansas, is a spur; and being so, it was unnecessary to secure the certificate from the Interstate Commerce Commission. Thus, the Arkansas court decided the case by determining the character of the proposed track, without expressly passing upon, or so far as appears considering, the question whether that federal issue was relevant in the proceeding under review.

We think that it was not relevant. If the proposed track is believed to be an extension, the remedy is not by way of defense to an application to fix the place and manner of the crossing. The statute of Arkansas which confers upon the Railroad Commission exclusive power to determine the place and manner of crossing antedates Transportation Act, 1920, which introduced paragraphs 18 to 22 of § 1 of the Interstate Commerce Act. The St. Louis Southwestern does not contend that the law of Arkansas requires denial of the application in the absence of a certificate from the Interstate Commerce Commission. It contends that the federal law requires the state commission to refrain from fixing the place and manner of crossing unless a certificate for building the proposed track shall have been secured from the Interstate Commerce Commission. There is no basis for such a contention. Transportation Act, 1920, which confers upon an interested carrier the right not to be subjected

to such new competition unless it is found to be in the public interest, prescribes the remedy for the protection 'of that right. The remedy prescribed is a proceeding to enjoin. Paragraph 20 of § 1 declares that " any construction or operation " contrary to the provisions of paragraphs 18, 19 or 20 " may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest." That procedure affords an opportunity " to secure an orderly hearing and proper determination of the matter," *Western Pacific California R. Co.* v. *Southern Pacific Co.,* 284 U.S. 47, 52; and the remedy is " both affirmative and complete," *Texas Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.,* 270 U. S. 266, 273.[3] The propriety of

[3] The method prescribed by paragraph 20 was pursued in the following cases: *Texas* v. *Eastern Texas R. Co.,* 258 U.S. 204; *Smyth* v. *Asphalt Belt Ry. Co.,* 267 U.S. 326; *Texas Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.,* 270 U.S. 266, 273; *Alabama & Vicksburg Ry. Co.* v. *Jackson & Eastern Ry. Co.,* 271 U.S. 244; *Texas & N. O. R. Co.* v. *Northside Belt Ry. Co.,* 276 U.S. 475; *Western Pacific California R. Co.* v. *Southern Pacific Co.,* 284 U.S. 47; *Claiborne-Annapolis Ferry Co.* v. *United States,* 285 U.S. 382, 391-392; *Piedmont & Northern Ry. Co.* v. *Interstate Commerce Commission,* 286 U.S. 299; *Detroit & M. Ry Co.* v. *Boyne City, G. & A. R. Co.,* 286 Fed. 540; *El Dorado & W. Ry. Co.* v. *Chicago, R. I. & P. Ry. Co.,* 5 F. (2d) 777; *Detroit Terminal R. Co.* v. *Pennsylvania-Detroit R. Co.,* 15 F. (2d) 507; *Missouri-Kansas-Texas R. Co.* v. *Northern Oklahoma Rys.,* 25 F. (2d) 689; *Missouri Pacific R. Co.* v. *Chicago, R. I. & P. Ry. Co.,* 41 F. (2d) 188; *Bremner* v. *Mason City & C. L. R. Co.,* 48 F. (2d) 615; *Missouri Pacific R. Co.* v. *Union Pacific Ry. Co.,* 60 F. (2d) 126; *Marion & E. R. Co.* v. *Missouri Pacific R. Co.,* 318 Ill. 436; 149 N.E. 492; compare *State* v. *Atlantic Coast Line R. Co.,* 95 Fla. 14; 116 So. 48. No case in the federal courts has been found in which any other method was pursued to secure relief against what was believed to be an unauthorized extension. Compare, however, *Seaboard Air Line* v. *Tampa Southern R. Co.,* 97 Fla. 340; 121 So. 477. In *Missouri Pacific R. Co.* v. *Chicago, R. I. & P. Ry. Co.,* 41

requiring resort to the remedy by injunction is illustrated by the proceedings in the case at bar. The question whether the proposed track is a spur or an extension has been decided by the Supreme Court of the State upon a record made before the state commission although, so far as appears, the issue was not raised there and neither that body nor the parties treated it as relevant.

Confining the St. Louis Southwestern to the remedy prescribed by Transportation Act, 1920, does not abridge the protection of its rights. If the proposed track is a spur, the question of the place and manner of the crossing presents a purely local problem to be decided by the state commission under the laws of the State, unless a claim were made that by allowing a crossing at grade the operation of trains in interstate commerce over the spur of the St. Louis Southwestern would be obstructed. The record is barren of any such suggestion. If the proposed track is an extension, the order of the state commission does not impair the right of the St. Louis Southwestern to be free from invasion of its territory unless the extension is in the public interest. The application to the Arkansas commission is not for leave to build the track or for leave to use it; it is solely to have fixed the place, manner and terms of the crossing. The order of the state commission does not purport to authorize the construction of the track, or its use when constructed. It would seem that a proposed larger use of the track, if an industrial lead and not a spur to a single industry, might well have been deemed relevant to the state commission's determination of the appropriate place and manner of crossing. But its determination of that matter in no way

F. (2d) 188; cited above, the relief sought and granted was an injunction against unauthorized construction and also against prosecution before the Arkansas railroad commission of a petition for a crossing.

concludes the federal claim of the St. Louis Southwestern here asserted. And postponement of the determination whether the track is a spur or an extension will prejudice no federal right of the St. Louis Southwestern. If the track should be held in the later proceeding to be a spur, obviously the St. Louis Southwestern will have no ground to complain of the order of the state commission. If the track is held to be an extension, that order will not become effective unless the Missouri Pacific should secure a certificate from the Interstate Commerce Commission. Indeed, the prior determination by the state commission of the place, manner and terms of the crossing may, by making the plan more concrete and definitive, aid the federal commission in reaching an informed judgment on the application. Compare Los Angeles Passenger Terminal Cases, 100 I.C.C. 421, 459.

For the reasons stated, we are of opinion that the judgment of the Supreme Court of Arkansas, as it directed merely that an order be entered fixing the place and manner of the crossing, is not in conflict with the federal law, whether the proposed track is a spur or an extension; and that in passing upon the character of the track, the state court determined a federal question not pertinent to the decision of the case. It was stated at the bar that there is now pending, in the federal court for Arkansas, a suit commenced by the St. Louis Southwestern, under paragraph 20 of § 1 of the Interstate Commerce Act, to enjoin construction of the proposed track on the ground that it is an extension. Since the question whether the proposed track is a spur or an extension was not pertinent to the decision of this case in the state courts, and as we necessarily refrain from passing on that question, it follows that neither the judgment of the Supreme Court of Arkansas, nor the judgment of this Court, will operate as *res judicata* on that issue. As thus defined the judgment is

*Affirmed.*