**S. H. & W. LUMBER CO., Chapman Lumber Company, and John Bakshas, d.b.a. Home Gas Co., Plaintiffs,**

v.

**The CALIFORNIA and OREGON COAST RAILROAD COMPANY, C. H. Demaray, Receiver thereof, and City of Grants Pass, Oregon, Defendants.**

Civ. No. 8441.

United States District Court
D. Oregon.

May 10, 1957.

Ellis & Ellis, Portland, Or., for plaintiff.

Charles A. Telfer, Grants Pass, Or., for defendant C. H. Demaray, Receiver.

Phillips, Coughlin, Buell & Phillips, Portland, Or., and Mr. W. W. Balderree, Grants Pass, Or., for defendant City of Grants Pass.

SOLOMON, District Judge.

This is an action by certain shippers to recover damages sustained by them as a result of the abandonment of a short line of railroad which serviced industrial operations in the vicinity of the City of Grants Pass, Josephine County, Oregon. This abandonment is claimed to be in violation of § 1(18) of Part I of the Interstate Commerce Act, 49 U.S.C.A. § 1(18). The right to damages is predicated on § 8 of the Act, 49 U.S.C.A. § 8, which authorizes an action for damages resulting from any violation of Part I thereof.

The defendants are the California and Oregon Coast Railroad Company, an Oregon corporation which was dissolved by the governor in 1931 for non-payment of license and franchise fees; C. H. Demaray, the receiver of that corporation since 1925 under the supervision of the Circuit Court of the State of Oregon for Josephine County; and the City of Grants Pass, which became owner of the rights of way and tracks of the railroad by decree of the same court in 1942.

The construction of this road was commenced by private promoters in 1900 and partially completed with the aid of money raised through the issuance of bonds by the City of Grants Pass. Although its charter permitted ownership and operation of a common carrier railroad, the city did not operate the railroad, but sold it to the California and Oregon Coast Railway Co., which subsequently defaulted on the contract of sale and went into receivership. The receiver operated the road as a common carrier from 1925 until 1931, when he leased it to the Beaver Portland Cement Company, a large shipper located adjacent to the road. The cement company operated the road as a common carrier until 1954, when it cancelled its lease. Since that time the road has not operated. Various offers were made by the shippers and others to buy or lease the road from the receiver, but the city opposed further use of the railroad because the present critical motor traffic situation requires that the State Highway Commission use a portion of the right of way to improve existing highway facilities.

Section 1(18) requires a common carrier to obtain permission from the Interstate Commerce Commission (ICC) before abandoning its railroad line. No such permission had been obtained when operations ceased on this railroad in October, 1954. However, on September 22, 1955, the city filed an application to abandon the line, and on November 6, 1956, the ICC granted such permission to both the city and the receiver. Plaintiffs here seek to recover damages resulting from failure to operate the line

from the time the cement company stopped operations in violation of § 1(18) to the time the ICC gave permission to abandon the line.

Defendants moved to dismiss this cause prior to trial on the theory that a violation of § 1(18) does not give rise to an action for damages. Although I denied the motion and ordered the trial to proceed, I have reconsidered this ruling, and I am now of the opinion that defendants' contention is correct and that the case must be dismissed.

Part I of the Interstate Commerce Act was passed in 1887 and it has been amended several times. The original act permitted a shipper or other aggrieved party to seek damages in a court action, 49 U.S.C.A. §§ 8, 9, or to request damages or mandatory relief from the ICC, 49 U.S.C.A. §§ 13(1), 15(1), for any violation of the Act. These remedial provisions are still in effect.

Neither at common law nor under the original act did the abandonment of a line give an aggrieved shipper a cause of action for damages against the offending carrier. However, § 1(18) was added to the act by the Transportation Act of 1920, 49 U.S.C.A. § 1(18). It provides that no common carrier shall extend or abandon an existing line or construct or otherwise acquire a new line without obtaining from the ICC a certificate of public convenience and necessity. It was accompanied by special enforcement provisions for court injunctions and criminal penalties, 49 U.S.C.A. § 1(20). The present case raises the question whether § 1(18), the 1920 amendment, gave a shipper an action for damages under the pre-existing § 8 for the abandonment of a railroad line.

Although I am not in full agreement with the reasoning in Powell v. United States, 1937, 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643, I am of the opinion that it

is determinative of this issue. In that case, the Central of Georgia Railway Company applied to the ICC to strike a tariff filed by a competitor, Seaboard Air Line Railway Company, which tariff committed Seaboard to furnish transportation over a line not previously serviced by it. Seaboard had not obtained an ICC certificate for an extension as required by § 1(18). The ICC ordered the tariff stricken, and this order in effect rendered it unlawful for Seaboard to furnish service over such extension.

To annul the ICC order, Seaboard brought an action which was tried before a statutory three-judge court. In that court, the order of the ICC was held valid.

Central of Georgia had applied to the ICC for relief under § 13(1) of the Act, the general provision giving to carriers, as well as to shippers and others, the right to file complaints with the ICC for the violation by a carrier of any of the provisions of Part I.

The Supreme Court viewed the ICC order as an attempt to enforce the provisions of § 1(18), and it set aside the order on the ground that § 1(20), the remedial provision enacted contemporaneously with § 1(18), was the only means of enforcing § 1(18). The Supreme Court gave the Act this construction in spite of the broad language of § 13(1). The Powell case not only holds that § 1(20) provides the only method for enforcing § 1(18),[1] but it also provides a precedent of statutory construction which is directly in point in the present case. Sections 8 and 13(1) are both general enforcement provisions applicable by their terms to any violation of Part I. Both of them were in the Act prior to the addition of § 1(18). Since the Powell case held that § 13(1) cannot be used to enforce the new § 1(18), it follows that

[1]. See also Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., 1926, 270 U.S. 266, 273, 46 S.Ct. 263, 70 L.Ed. 578; and St. Louis Southwestern Ry. Co. v. Missouri Pacific R. Co., 1933, 289 U.S. 76, 53 S.Ct. 516, 77 L.Ed. 1042. American Trading Corp. v. Seaboard Air Line Ry. Co., 201 I.C.C. 440 (1934), the authority upon which plaintiff relies, is an I.C.C. decision rendered three years before the Powell case.

§ 8 is not entitled to any broader application.

Because I have no jurisdiction to award damages for the alleged violation of § 1(18) and because the future of the railroad has been settled by an ICC certificate granting permission to abandon the line, this action must be dismissed.