## 17725

ATLANTA AND CHARLOTTE AIR LINE RAILWAY COMPANY and Southern Railway Company, Appellants, v. SPARTANBURG TERMINAL COMPANY, Respondent.

(117 S. E. (2d) 574)

*Messrs. William C. Bennett, Jr.,* of Washington, D. C., *Frank G. Tompkins, Jr.,* of Columbia, and *Sam R. Watt,* of Spartanburg, *for Appellants,*

*Messrs. Jesse W. Boyd* and *Means & Browne,* of Spartanburg, *for Respondent,*

December 12, 1960.

STUKES, Chief Justice.

This case turns upon whether one railroad corporation may cross by its track the right of way and tracks of another railroad without prior order of the State Public Service Commission. We think that it cannot, perforce Sec. 58-991 of the Code of Laws of South Carolina of 1952, which follows:

"The Public Service Commission shall regulate and control by special order in each case the manner in which any street railway or other railroad track may cross any railroad track and the manner of constructing culverts under any railroad so as to effect proper drainage of adjacent territory."

The legislative purpose is manifest and is a proper exercise of the police power to insure the safety and convenience of the citizens of the State. It is peculiarly appropriate here because the plan is to effect the crossing by means of a tunnel, at an acute angle, under the exist-

ing tracks of appellants within the populous city of Spartanburg.

The question arises upon appeal from the sustention of demurrer to appellants' complaint for injunction against respondent's proceeding in condemnation of the right of way and ancillary temporary surface easements for construction purposes. An allegation of the complaint is, par. 17, that the respondent, quoting, "has not obtained the necessary authority of the South Carolina Public Service Commission before construction of said tunnel." The lower court was of opinion that such Commission approval is unnecessary because respondent has obtained certificate of public convenience and necessity of the federal Interstate Commerce Commission, citing the Interstate Commerce Act, § 1(20), 49 U. S. C. A. § 1(20), and *Transit Commission et al. v. United States et al.,* 289 U. S. 121, 53 S. Ct. 536, 77 L. Ed. 1075. In this we think there was error.

It is elementary that the Interstate Commerce Commission has exclusive jurisdiction over the extension of the lines of railroads that are engaged in interstate transportation, which those here concerned are; but it does not follow that the State is thereby deprived of its police power to regulate reasonably the location and construction in order, in good faith, to insure the maximum safety and convenience of the public. No authority has been cited, and we know of none, which so holds. On the other hand, in *St. Louis Southwestern Ry. Co. v. Missouri Pac. R. Co.,* 289 U. S. 76, 53 S. Ct. 516, 517, 77 L. Ed. 1042, the Supreme Court upheld the authority of the State of Arkansas to "fix the point and manner of (the) crossing" of one railroad by another, without prejudice, of course, to the exclusive jurisdiction of the Interstate Commerce Commission to grant or refuse permission (certificate) for the construction if it be an extension of a line engaged in interstate commerce and therefore within the federal statute. We quote, in part, the conclusion of the court: "For the reasons stated, we are of opinion that the judgment of the

Supreme Court of Arkansas [185 Ark. 824, 49 S. W. (2d) 1054], as it directed merely that an order be entered fixing the place and manner of the crossing, is not in conflict with the federal law, whether the proposed track is a spur or an extension." The pertinent provisions of the Arkansas constitution and statute and ours are similar.

The location and manner of construction of the crossing of one railroad by another appears not to be within the scope of the federal act, as it is within our state laws. The purpose of the federal act is well stated in *Union P. R. Co. v. Denver & Rio Grande W. R. Co.,* 10 Cir., 198 F. (2d) 854, 858, as follows, and it excludes the right to regulate which is here asserted:

"The underlying purpose of the provision contained in paragraph (18) of the Act forbidding the construction of an extension of an existing line without first obtaining a certificate of convenience and necessity was to prevent improvident and unnecessary expenditures for the construction and operation of lines not needed to insure adequate service; to protect interstate carriers from weakening themselves by constructing and operating superfluous lines, and to protect them from being weakened by another carrier operating in interstate commerce a competing line not required in the public interest; and to preserve well-balanced competition among competing carriers, that being deemed in the public interest. *Texas & Pacific Railway Co. v. Gulf, Colorado & Sante Fe Railway Co.,* 270 U. S. 266, 46 S. Ct. 263, 70 L. Ed. 578; *Texas & New Orleans Railroad Co. v. Northside Belt Railway Co.,* 276 U. S. 475, 48 S. Ct. 361, 72 L. Ed. 661; *Chesapeake & Ohio Railway Co. v. United States,* 283 U. S. 35, 51 S. Ct. 337, 75 L. Ed. 824; *Interstate Commerce Commission v. Oregon-Washington Railroad & Navigation Co.,* 288 U. S. 14, 53 S. Ct. 266, 77 L. Ed. 588."

Respondent would limit the purview of Sec. 58-991, *ante,* to grade crossings because the earlier-enacted, but following Sec. 58-992 is so restricted by its terms.

It refers to crossing "at the same level"; Sec. 58-991 does not. Respondent would modify the meaning of Sec. 58-991 by the restriction contained in Sec. 58-992, which seems to us illogical, as would the result which would be that the Public Service Commission has jurisdiction to regulate the crossing by one railroad of another at grade but not by overpass or underpass (tunnel). To state the proposition seems to us to refute it.

Respondent reminds us that the jurisdiction of the Public Service Commission is dependent upon statute; it has no inherent jurisdiction. *Piedmont & N. Ry. Co. v. Scott,* 202 S. C. 207, 24 S. E. (2d) 353. But here we think it clear that jurisdiction of the Commission does exist perforce the terms of Code Sec. 58-991, *i. e.,* "The * * * Commission shall regulate and control by special order in each case the manner in which any * * * railroad track may cross any railroad track * * *."

With Sec. 58-992, referring expressly to grade crossings ("at the same level"), already "on the books" for many years the General Assembly passed Sec. 58-991 in 1912, which was Act No. 451 of that year, entitled "An Act to Empower the Railroad Commission (now the Public Service Commission) to Regulate the Crossing of Any Street, Street Railway or Other Railway over Any Railroad Track." 27 Stat. 791.

The ordinary definition of the verb "cross" is to pass from side to side, as from one side of a street or river to the other. When applied to railroads and intended to refer to a crossing at grade it is usually so described,—"grade crossing", or as in Sec. 58-992 a crossing "at the same level." With the latter already within the jurisdiction of the Commission it must have been the intention of the legislature in the enactment of Sec. 58-991 to include within the jurisdiction of the Commission any sort of crossing of one railroad by another. Contrary conclusion, as contended for by respondent, would have grade crossings regulated and tun-

nels and overpasses (which doubtless demand it more) unregulated. Such an anomalous intent will not be attributed to the legislature in the absence of clear expression.

It was said in *Cleveland, C. C. & St. L. Ry. Co. v. Halbert,* 75 Ill. App. 592, that every intersection is a crossing but every crossing may not be an intersection, since one railroad may cross another over or under it but not on the same level and in such case there would be, strictly speaking, no intersection but it would be a crossing. In the old New York case of *People v. New York Cent. Ry. Co.,* 25 Barb. 199, it was held that a statute requiring locomotives to sound a bell or whistle 80 rods from the place where the railroad should cross any traveled road or street, it does not mean merely to cross at grade, but includes an overhead crossing.

We are of the opinion that before proceeding with its condemnation and construction respondent is required to apply to the South Carolina Public Service Commission and obtain its order governing the manner of the construction of its proposed tunnel under the tracks of appellants, which will be a crossing of them. Code Sec. 58-991.

Appellants raise other points which it is unnecessary to consider for the purpose of this decision, including the contention that the claimed failure and refusal of respondent to disclose fully its construction plans makes it impossible for appellants to determine and prove their damages in the condemnation proceeding. As pointed out in their brief, this problem (if of substance) will doubtless be solved in a proper proceeding before the Public Service Commission and its resultant order.

The order under appeal is reversed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.